UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>vs.<br><br>LEILIH SMART,<br><br>              Defendant. | 3:19-CR-30023-RAL<br><br>**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING MOTION TO SUPPRESS** |

A federal grand jury indicted Leilih Smart (Smart) for assault resulting in serious bodily injury to a child in violation of 18 U.S.C. §§ 1153, 113(a)(6), and 3559(f) and child abuse in violation of 18 U.S.C. § 1153, SDCL §§ 26-10-1 and 26-1-1. Doc. 1. Smart moved to suppress from use at trial statements she made on the basis that law enforcement obtained such statements in violation of Miranda v. Arizona, 384 U.S. 436 (1966), and the Fifth Amendment. Doc. 53. Magistrate Judge Mark A. Moreno held a suppression hearing during which he received three exhibits into evidence and heard testimony from the interviewing officers, Cheyenne River Sioux Tribe Law Enforcement Services (CRSTLES) Patrol Sergeant Aaron Runs After and CRSTLES Detective Larry LeBeau. Docs. 59, 60. Thereafter, Judge Moreno issued a Report and Recommendation recommending that the motion to suppress be denied. Doc. 62. Smart has filed an objection to that Report and Recommendation. Doc. 63.

This Court reviews a report and recommendation under 28 U.S.C. § 636(b)(1), which provides in relevant part that "[a] judge of the [district] court shall make a de novo determination

1

of those portions of the report or specified proposed findings or recommendations to which objection is made." However, "[i]n the absence of an objection, the district court is not required 'to give any more consideration to the magistrate's report than the court considers appropriate.'" United States v. Murillo-Figueroa, 862 F. Supp. 2d 863, 866 (N.D. Iowa 2012) (quoting Thomas v. Arn, 474 U.S. 140, 150 (1985)). Having conducted a de novo review of those portions of the Report and Recommendation to which Smart objects, this Court adopts the Report and Recommendation.

## I. Relevant Facts

In the early morning of January 1, 2019, Smart took her 22-month-old son to the Indian Health Services (IHS) emergency room (ER) in Eagle Butte, South Dakota. Mot. Hr'g Tr. at 8–9. Around 2:00 a.m., an ER nurse contacted the CRSTLES to report suspected child abuse. Mot. Hr'g Tr. at 8. Sergeant Runs After responded to the ER. Mot. Hr'g Tr. at 8. Once there, a nurse informed Sergeant Runs After of the name of the mother, explained that the victim had submersion burn marks on his hands, and directed Sergeant Runs After to the ER room where Smart and her children were located. Mot. Hr'g Tr. at 10–11.

Sergeant Runs After entered the ER room, leaving the sliding glass door approximately two to three feet open. Mot. Hr'g Tr. at 12–14. Sergeant Runs After was in uniform and carrying his service revolver, although his coat covered at least part of the weapon. Mot. Hr'g Tr. at 11–12. Inside, Smart sat on the hospital bed, holding K.S., the victim, in her lap. Ex. 1; Mot. Hr'g Tr. at 14. Smart's nine-year-old daughter, L.T., sat next to Smart on the bed. Ex. 1; Mot. Hr'g Tr. at 14. Sergeant Runs After did not handcuff or restrain Smart in any manner. Mot. Hr'g Tr. at 20.

Sergeant Runs After spoke with Smart in front of the children, recording their conversation using the body camera on his lapel. Ex.1; Mot. Hr'g Tr. at 15. Before turning on the camera,

2

Sergeant Runs After, who was already acquainted with Smart because she previously worked as a CRSTLES officer, introduced himself and asked what happened. Mot. Hr'g Tr. at 9, 16–17. Smart told him that K.S. had peed all over the bathroom and was touching himself. Ex. 1; Ex. 2 at 1. While cleaning him up, Smart helped K.S. wash his hands. Ex. 1; Ex. 2 at 2–3. Smart explained that she did not realize the water was so hot, and K.S. burned his hands. Ex. 1; Ex. 2 at 2–3. Sergeant Runs After asked Smart some follow-up questions, and Smart and L.T. both provided additional details. Ex. 1; Ex. 2; Mot. Hr'g Tr. at 19. Sergeant Runs After also asked Smart for some biographical information, like each child's name and date of birth. Ex. 1; Ex. 2; Mot. Hr'g Tr. at 18. After talking for roughly ten minutes, Sergeant Runs After told Smart to "hold on, okay," so that he could get ahold of social services. Ex. 1; Ex. 2 at 3; Mot. Hr'g Tr. at 21.

After leaving the room, Sergeant Runs After spoke with the doctor, contacted social services, and called dispatch so that dispatch could get the on-call detective on site. Mot. Hr'g Tr. at 21–22. As the detective on call that morning, Detective LeBeau received a call from dispatch at around 2:35 a.m. Mot. Hr'g Tr. at 39. Detective LeBeau then called Sergeant Runs After, drove to the hospital, and arrived there 20 minutes after having initially received the call from dispatch. Mot. Hr'g Tr. at 39–40. Upon arrival, Detective LeBeau spoke with Smart's mother, Sergeant Runs After, and medical staff. Mot. Hr'g Tr. at 40–42. Then Detective LeBeau initiated contact with Smart, and Smart agreed to speak with him in an adjacent room. Mot. Hr'g Tr. at 43.

At the outset, Detective LeBeau orally administered Smart her Miranda rights. Mot. Hr'g Tr. at 45–47. Smart stated that she understood her rights and was willing to speak with Detective LeBeau. Mot. Hr'g Tr. at 47–48. Because Detective LeBeau did not have any advice of rights forms on him, he made notations on a sheet of paper of when and how he administered the Miranda warnings and requested Smart to sign below his jottings. Ex. 3; Mot. Hr'g Tr. at 47–48. After

Smart signed the document, Detective LeBeau did so too. Ex. 3. Smart provided Detective LeBeau with a statement about the events that led to her bringing K.S. to the ER. Mot. Hr'g Tr. at 49. Smart never invoked any of her rights during the interview. Mot. Hr'g Tr. at 48–49. At the end of the interview, Detective LeBeau arrested Smart on tribal charges.

## II.   Discussion

### A. Statement to Sergeant Runs After

Smart objects to Judge Moreno's finding that Sergeant Runs After was not required to administer Smart Miranda warnings. Miranda requires law enforcement officers to administer certain warnings to a suspect when the suspect is (1) in custody and (2) subject to interrogation. Miranda, 384 U.S. at 478–79; United States v. Cowan, 674 F.3d 947, 957 (8th Cir. 2012) (citation omitted). It appears to be undisputed that Smart was subject to interrogation, see Rhode Island v. Innis, 446 U.S. 291, 301 (1980) (interrogation includes direct questioning or any practice reasonably likely to evoke an incriminating response from a suspect), so the issue is whether Smart was in custody.

To determine whether a suspect is in custody, "the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam) (quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (per curiam)). To answer that question, courts must examine the circumstances surrounding the interrogation and determine whether those circumstances would lead a reasonable person to "have felt he or she was at liberty to terminate the interrogation and leave." J.D.B. v. North Carolina, 564 U.S. 261, 270 (2011) (quoting Thompson v. Keohane, 516 U.S. 99, 112 (1995)).

4

Both the United States Supreme Court and the Eighth Circuit have set forth relevant factors for courts to consider in determining whether a suspect is in custody. For example, courts should examine "the location of questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." Howes v. Fields, 565 U.S. 499, 509 (2012) (citations omitted); see also Cowan, 674 F.3d at 957 (citing United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990)). Such factors are neither exhaustive nor dispositive. United States v. Thomas, 664 F.3d 217, 222 (8th Cir. 2011).

Smart contends that Sergeant Runs After was required to administer her Miranda warnings because Smart was in custody. Doc. 63 at 3–4. To support this argument, Smart highlights her inability to leave the room and Sergeant Runs After's failure to provide certain warnings. First, Smart argues that her freedom to move was curtailed by her child sitting on her lap coupled with Sergeant Runs After standing near the doorway. But as the Supreme Court in Howes emphasizes, "[d]etermining whether an individual's freedom of movement was curtailed . . . is simply the first step in the analysis, not the last. Not all restraints on freedom of movement amount to custody for purposes of Miranda." 565 U.S. at 509.

Smart also argues that Sergeant Runs After should have told her that questioning was voluntary, that she was free to leave or request the officers to do so, or that Smart was not under arrest. See Griffin, 922 F.2d at 1349. However, the failure to provide such warnings does not automatically render the suspect in custody. See United States v. Flores-Sandoval, 474 F.3d 1142, 1147 (8th Cir. 2007) (finding that the suspect was not in custody even though he was not informed that he was free to leave); United States v. Mottl, 946 F.2d 1366, 1370–71 (8th Cir. 1991) (recognizing that while officers failed to tell the suspect that he could terminate the interview at

5

will or that they did not intend to arrest him, the totality of circumstances established that the suspect was not in custody).

Although Smart's freedom to move was arguably restricted by her child being on her lap and Sergeant Runs After failed to admonish Smart of her Griffin warnings, Mot. Hr'g Tr. at 30–31, 34–35, the totality of circumstances nevertheless reveals that a reasonable person in Smart's position would have felt free to terminate the interrogation and leave or to ask Sergeant Runs After to leave. First, the questioning took place in a neutral setting and lasted merely ten minutes in duration. Mot. Hr'g Tr. at 21. Smart did most of the talking; Sergeant Runs After asked her what happened and how the child sustained the burns. Ex. 1, Ex. 2, Mot. Hr'g Tr. at 17–19. Otherwise, Sergeant Runs After only interjected to ask clarifying questions and obtain biographical information. Ex. 1, Ex. 2; Mot. Hr'g Tr. at 18–19. Further, Sergeant Runs After never employed any strong-arm or deceptive tactics, nor did he restrain Smart or prevent her from leaving if she so desired. Mot. Hr'g Tr. at 20–21. Finally, Smart was not placed under arrest after the conversation had ended. Ex. 1; Mot. Hr'g Tr. at 21. For these reasons as well as those contained in the Report and Recommendation, Doc. 62 at 6–12, Judge Moreno properly found that Smart was not in custody, and therefore, that Sergeant Runs After was not required to give the Miranda warnings under these circumstances.

### B. Statement to Detective LeBeau

In reliance on her argument above, Smart next objects to Judge Moreno's finding that Smart was not subject to a "two-step interrogation" in violation of Missouri v. Seibert, 542 U.S. 600 (2004) (plurality opinion). In Seibert, a divided Supreme Court held that the defendant's second statement was inadmissible because the officer had deliberately delayed administering Miranda warnings until after the defendant had given her first statement. Id. There, the suspect

was arrested and interrogated in the middle of the night. Id. at 604. The officer intentionally refrained from administering the suspect her Miranda warnings with the hope that he might elicit a confession. Id. Once the suspect indeed confessed, the officer administered Miranda warnings, confronted the suspect with her unwarned statements, and elicited the same confession. Id. at 604–05.

While there was no majority opinion in Seibert, Justice Kennedy's concurrence provided the final vote for suppression of the second statement. Id. at 618–22. The plurality developed a multi-factor test to determine when mid-statement warnings were effective, id. at 621–22, whereas Justice Kennedy thought the case should be resolved on narrower grounds, suppressing post-warning statements only if "the two-step interrogation technique was used in a calculated way to undermine the Miranda warning," id. at 622. The Eighth Circuit has adopted Justice Kennedy's approach, holding that absent a "calculated effort" on the part of law enforcement, the second statement is admissible so long as the statement was knowingly and voluntarily made. United States v. Torres-Lona, 491 F.3d 750, 757–58 (8th Cir. 2007). If courts find that a deliberate two-step interrogation technique was used, "postwarning statements that are related to the substance of prewarning statements must be excluded unless curative measures are taken before the postwarning statement is made." Seibert, 542 U.S. at 622; see also United States v. Ollie, 442 F.3d 1135, 1143 (8th Cir. 2006) ("The police could have taken curative measures to help [the defendant] understand the true import of the belated Miranda warnings, but it did not. Seibert therefore requires the exclusion of the written confession.").

Smart contends that she was subject to a "two-step interrogation" in violation of Seibert, and therefore, Detective LeBeau should have taken curative measures to ensure that his questioning of Smart was not tainted by the earlier statements she made to Sergeant Runs After.

7

Doc. 63 at 4–5. This argument fails for two reasons. First, consistent with Judge Moreno's findings, this Court concludes that Smart was not subject to custodial interrogation when she was questioned by Sergeant Runs After. See United States v. Thunderhawk, 799 F.3d 1203, 1207 (8th Cir. 2015) (noting that the defendant was not in custody, meaning that Miranda rights were not required, and therefore, Seibert had no bearing in the case). Thus, the first step of custodial interrogation with a Miranda warning in the two-step interrogation is missing here. But even if Smart's statements to Sergeant Runs After had been a product of custodial interrogation, the prosecution has carried its burden of showing that law enforcement did not deliberately use a two-step interrogation technique to circumvent Miranda and that Smart made her statements to Detective LeBeau knowingly and voluntarily. Ex. 3; Mot. Hr'g Tr. at 44–49. For these reasons as well as others contained in the Report and Recommendation, Doc. 62 at 15–16, Judge Moreno properly found that Smart's statements to Detective LeBeau should not be suppressed.

### III. Conclusion

For the foregoing reasons, it is hereby

ORDERED that Smart's Objection to the Report and Recommendation, Doc. 63, is overruled. It is further

ORDERED that the Report and Recommendation For Disposition of Motion to Suppress Statements, Doc. 62, is adopted. It is further

ORDERED that Smart's Motion to Suppress, Doc. 53, is denied.

DATED this 2nd day of February, 2021.

                              BY THE COURT:

                              ROBERTO A. LANGE
                              CHIEF JUDGE